Thomas W. MORRIS and Eleanor R. Morris,

v.

GIMBEL BROTHERS, INC., d/b/a "Gimbel's", Appellant.

No. 16994.

United States Court of Appeals Third Circuit.

Argued March 21, 1968.

Decided May 9, 1968.

Charles Jay Bogdanoff, Philadelphia, Pa. (Albert C. Gekoski, Philadelphia, Pa., on the brief), for appellants.

Mitchell A. Kramer, Kramer & Harrison, Philadelphia, Pa. (David C. Harrison, Philadelphia, Pa., on the brief), for appellees.

Before McLAUGHLIN, FORMAN and FREEDMAN, Circuit Judges.

OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

Plaintiff-appellee, Eleanor R. Morris, fell in appellant's department store

March 30, 1963. Thereafter she and her husband sued appellant in this diversity negligence action for damages arising out of her consequent injuries. There was a jury trial which resulted in verdicts for the plaintiffs.

Appellant asserts that Mrs. Morris was guilty of contributory negligence as a matter of law, that the trial Judge erred regarding contributory negligence in his charge to the jury and that there was also error in the part of the charge dealing with the definition of the word "gratuity".

Mrs. Morris was a trial witness. She testified that on the afternoon of her accident, she was in defendant's store. At the little girls' sock counter she selected three pairs and proceeded to locate a salesgirl. She went around the counter as she stated "I was looking for someone to take my purchase, and I was looking at my purchase. I had the socks in my hand." She went from one end of the sales area to the other side. At the cash register she gave the socks to the girl in charge. The latter noticed that one pair was a different price than the other two. She asked Mrs. Morris if she desired that 39 cent pair. Mrs. Morris said no, she wanted three pair of the 45 cent socks. The girl inquired of Mrs. Morris whether she wished to go back and exchange the 39 cent pair for another 45 cent pair. That is what Mrs. Morris wanted to do. So, according to her, she started to turn to her left to go around the counter. As she did so she tripped over some boxes and fell to the floor. She said there was a protrusion of some sort over the counter, that the store detective was summoned and the boxes were moved. She was then taken to the Delaware County Hospital in a police emergency wagon. *On cross-examination Mrs. Morris was asked "And that the counter that you were standing at had an overhang and for that reason you were unable to see boxes or whatever it was that you fell on; is that correct?" Mrs. Morris answered "To my knowledge, yes. I could see there was an overhang."* (Emphasis supplied). Pressed by the store's attorney with leading questions, she continued to answer him that there was some sort of an overhang to the counter and that she did not see the boxes. The attorney showed her two pictures allegedly of the counter and presumably showing its condition at the time of the accident. *Mrs. Morris did not recognize them "as being the counter at which I was standing."* (Emphasis supplied). The only date on the pictures was a year and a half after the accident. The defense attorney later stated that date was when the deposition of Mrs. Morris was taken. It developed from the evidence of the store clerk who served Mrs. Morris, that she thought the pictures had been taken perhaps eight months after the accident. Mrs. Morris made it very clear that she never saw the boxes at the counter on the public aisle until she was lying on the ground.

Miss Phipps, the clerk who served Mrs. Morris was a trial witness, called by the plaintiff. *The only time she had even worked at that particular counter was the afternoon of the accident.* She said her memory was vague about the occurrence. She was shown the above mentioned pictures by the store attorney and asked "Is there any overhang to that glass top beyond the side of the counter?" She answered no. She was then asked *"Is there anything on that counter that would obstruct the vision of a person who was standing alongside of the counter from seeing, what—?"* (Emphasis supplied). That baldly improper question was objected to and the objection was sustained. There was no attempt by the attorney to ascertain whether Miss Phipps remembered if there was any obstruction on the counter where Mrs. Morris fell *at the time she fell.* She did say that she believed she had helped Mrs. Morris with a purchase, that she did believe she saw Mrs. Morris going down as she fell. She did see boxes on the floor and finally admitted that *"They were in an area where there was traffic."* (Emphasis supplied). There was no other evidence regarding the accident. The Court allowed the pictures to

go into evidence over plaintiff's objection that they had not been authenticated. The Court said it was a question of credibility for the jury. Strange as it must seem, out of that entire store personnel, the only person who appeared as a fact witness was the salesgirl who had been in the critical section just once, at the time of the accident, and was called by the plaintiff.

 Plaintiff was a business invitee on the store premises. The store was bound to maintain its premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended. Vetter v. Great A. & P. Tea Co., 322 Pa. 449, 454, 185 A. 613, (1936). As the Court said in the charge "Certainly it seems, no doubt, that there were a couple of one-foot high boxes in the place where people could ordinarily be expected to walk." It should be mentioned that the Court gave the jury for its own decision, the question of whether the store was responsible for the presence of the boxes.

We do not consider that plaintiff's walk from where she chose the socks to the salesgirl at the cash register is of prime import here. She had no trouble in that walk. She was looking for a representative of defendant who could check out her purchase. The location of her later accident was beyond the cashier, at which point Mrs. Morris testified there was some protrusion of the counter. At the time she was moving toward the check-out place, she had no intention of returning to the child sock counter. She was merely expecting to pay for the socks she had taken which would have finished her business there. Under her testimony the boxes were obscured by the counter overhang or protrusion. In any event she would not have passed where they were if she had been able to complete her purchase as she expected. Her sole reason for going by the protruding counter was in order to return to where the childrens socks were on display. So the question of whether she was excused from looking at the floor as she walked

toward the cashier does not even enter the proximate contributory negligence problem. She arrived safely at the register which was to have been the end of her childrens socks project. It was learning she had one wrong pair that forced her to return to the sock counter. To accomplish this she had to make a left turn beyond the register. It was while making that turn that she was tripped by the boxes which were in the public aisle, obscured by the protrusion of the counter at that place.

 The appellant's attorney attempts by argument to denegate plaintiff's testimony. That involves simply an element of credibility which was for the jury under the Court's directive. It is noteworthy that plaintiff's evidence as it is set out in the transcript does present a simple believable fact statement making no attempt to cover the waterfront; one which could be accepted, as it was, with respect to the facts of the fall.

 The exact situation before us does not appear in any Pennsylvania decision we have seen. Pewatts v. J. C. Penney Co., 356 F.2d 586, 589 (3 Cir. 1966) cited by appellant actually helps appellee. In that suit plaintiff testified that she was looking at the floor and where she was walking when she tripped over a platform clearly revealed to her and under circumstances that "it may not be said that there was a negligent obscuring * * * which caused or even contributed to the accident." In Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A.2d 754 (1941), also relied on by appellant, plaintiff walked into an open elevator shaft in semi-darkness solely because he assumed that the elevator was at that floor. None of the other decisions referred to by appellant assist it in any degree. Mrs. Morris, as she turned to return to the sales counter was entitled to assume that the aisle in front of her was an ordinary customer passageway free from a hidden obstruction. The latter, i. e. the boxes, which

were definitely there caused her fall. Under the trial testimony the defense assertion that Mrs. Morris was contributorily negligent had to be a question for the jury to pass on. In Borsa v. Great Atlantic & Pacific Tea Company, 207 Pa.Super. 63, 69, 215 A.2d 289, (1965) a leading case in this field, the Court states that the only circumstances under which such a plaintiff could be found guilty of contributory negligence as a matter of law is "[Where] it is so clearly revealed that fair and reasonable persons cannot disagree as to its existence."

Appellant's second point needs no discussion. In the light of the whole record we find no substantial error in the charge with respect to contributory negligence.

The final point urged by appellant has to do with whether the money received by plaintiff from her employer while she was not working because of her injuries was a gratuity or her regular wages. Again on the record we find no substantial error in the charge respecting this. There was no evidence that what the Eastern Baptist Seminary, her employer, gave her was other than a gift. As is in the record, she worked for the Seminary to earn money for her family while her husband was in school. She had no contract of employment, was hired orally, she did not recall anybody from the Seminary saying anything to her about being paid during the time she was disabled. The total time she was out amounted to 39½ days. On the basis of that testimony the Court charged the jury that if it found the money given to her by the Seminary was a pure gratuity and that Mrs. Morris did nothing to earn the money she would be entitled to recover her lost wages as is the undisputed Pennsylvania law. With no evidence in the trial of a contractual obligation on the part of the employer to pay her wages while she was not working and when her inability to work was in no way connected with her employment, as we see it the Court properly submitted the issue to the jury.

The judgment of the District Court will be affirmed.

Judge FREEDMAN concurs in the result.