Hudson VELOSO and Marta Veloso, his wife Plaintiffs,

v.

WESTERN BEDDING SUPPLY COMPANY, INC., Gribetz International, Leggett & Platt, Inc., 123 Corporation (a fictitious Company), ABC Corporation (A fictitious Company), DEF Corporation (A Fictitious Company) and XYZ Corporation (A Fictitious Company) Defendants.

No. CIV.A.01–00196 AMW.

United States District Court, D. New Jersey.

Aug. 7, 2003.

Bonny G. Rafel, Hack Piro O'Day Merk-linger, Wallace & Mckenna, Florham Park, NJ, for Plaintiffs.

Walter J. Timby, III, Margolis, Edel-stein, William D. Longo, Margolis Edel-stein, Westmont, NJ, for Defendants.

## MEMORANDUM OPINION

WOLIN, District Judge.

Before the Court are several *in limine* motions brought by the parties hereto. Plaintiffs Hudson Veloso ("Plaintiff") and Marta Veloso (together, "Plaintiffs") seek an order for a jury instruction directing a spoliation inference with respect to certain documents allegedly lost by the defendants.[1] Defendants Western Bedding Supply Company, Inc. ("WBSCO"), Gri-

---

1. Plaintiffs initially moved as well for an order declaring Gribetz International and Leggett & Platt, Inc. corporate successors to Western Bedding Supply Company, Inc. By letter dated April 10, 2003, counsel for Plaintiffs informed the Court that it was withdrawing that portion of its motion *in limine*.

betz International ("Gribetz"), and Leggett & Platt, Inc. ("Leggett & Platt," collectively, "Defendants") move to preclude Plaintiffs from introducing two types of evidence: (1) any evidence of manuals issued by WBSCO and Gribetz after 1986, including expert evidence, and (2) any evidence pertaining to post–1986 machine design changes. These matters are decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Plaintiffs' request for a spoliation inference. The Court will also deny in part Defendants' motion to preclude evidence pertaining to post–1986 manuals. The Court will order a hearing in connection with that motion solely on the issue of the admissibility of Plaintiffs' expert report and testimony. Finally, the Court will deny Defendants' motion to preclude evidence pertaining to post–1986 machine design changes.

## BACKGROUND

From 1991 until January 1999, Plaintiff was the mechanic for Mattresonic, a mattress manufacturer.[2] As part of his job responsibilities, Plaintiff performed maintenance and repair work on the machines utilized by Mattresonic in its business. One of those machines, the subject of the present litigation, is known as the "Wrapper," an automatic packaging machine used to wrap mattresses and box springs in plastic prior to distribution.

The Wrapper was initially designed, manufactured and distributed by WBSCO. In 1994, Leggett & Platt acquired WBSCO.[3] For a time, both WBSCO and Gribetz, as subsidiaries of Leggett & Platt,

manufactured the Wrapper. But eventually, Gribetz assumed all manufacturing responsibilities for the machine. In 1995, Gribetz and Leggett & Platt made certain design changes to the Wrapper. Consequently, the following year, WBSCO produced a new operation manual for the redesigned Wrapper (the "Revised Manual"). That manual allegedly contains additional safety instructions and warnings not set forth in the original operation manual (the "Original Manual").

Mattresonic did not purchase the redesigned Wrapper, instead continuing to utilize its original machine. Mattresonic did receive a copy of the Original Manual when it first purchased the Wrapper. Defendants did not send a copy of the Revised Manual to Mattresonic.

On January 28, 1999, Plaintiff was inside the Wrapper performing repairs on the machine when the Wrapper began operating. The platen at the top of the machine came down on top of Plaintiff causing him serious injuries. The instant products liability action ensued.

## ANALYSIS

1. *Plaintiffs' Motion for a Spoliation Inference*

According to Plaintiffs, prior to its acquisition by Leggett & Platt, WBSCO maintained a "card file" of the machines they manufactured. In addition, WBSCO maintained contact with its customers by sending safety notification upgrades and alerts. Plaintiffs allege that when WBSCO was sold, the "card files" and notification records were provided to Leg-

---

**2.** Mattresonic was formerly known as Continental Mattress. In 1998, that company was acquired by Salamon Oberlander. At that time, it changed its name to Mattresonic, Inc.

**3.** Leggett & Platt had previously acquired Gribetz in 1991. Initially, the relationship

among Defendants was a subject of dispute in this action. Subsequently, however, Leggett & Platt and Gribetz admitted their status as corporate successors to WBSCO. Therefore, the Court need not delve into the complexities of that corporate structure at this time.

gett & Platt. However, despite Plaintiffs' requests for those documents, Leggett & Platt never produced that documentation during discovery.

In their reply to Plaintiffs' request for admissions, Defendants denied that they knew in 1996 either that Mattresonic owned a Wrapper or that Mattresonic employees were operating a Wrapper. Plaintiffs contend that the fact that Leggett & Platt and Gribetz have not produced documents evidencing the relationship among themselves, WBSCO, and Mattresonic, "should not deny plaintiff the right to claim defendants had knowledge Mattresonic possessed and utilized a Wrapper." Therefore, Plaintiffs ask the Court to instruct the jury that it is permitted to make a spoliation inference that the unproduced documents evidenced that Defendants did have such knowledge.

A spoliation inference allows a jury to presume that destroyed evidence "might or would have been unfavorable to the position of the offending party." *Costello v. City of Brigantine*, 2001 WL 732402, at *26 (D.N.J.2001) (citations omitted). "When the contents of a document are relevant to an issue in the case, the spoliation inference is nothing more than the common sense observation that a party who hides relevant evidence ... did so out of a well-founded fear that the contents would harm him." *Scott v. IBM Corp.*, 196 F.R.D. 233, 248 (D.N.J.2000) (citing *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir.1995)).

■ There are four factors that determine whether the inference should apply. First, the evidence must be under the adverse party's control. *Brewer*, 72 F.3d at 334. Second, there must be actual (i.e., intentional) suppression or withholding of the evidence. *Id.; Costello*, 2001 WL 732402, at *26. No inference arises where the circumstances indicate that the evidence in question was lost, accidentally

destroyed, or otherwise properly accounted for. *Brewer*, 72 F.3d at 334. Third, the evidence must be relevant. *Costello*, 2001 WL 732402, at *26. Finally, it must have been reasonably foreseeable at the time the document was created that it would later be discoverable. *Scott*, 196 F.R.D. at 248. "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Id.*

■ After reviewing the parties' submissions, the Court concludes that no spoliation inference is warranted. Principally. Plaintiffs have failed to adduce evidence to support the conclusion that the loss of the documentation was intentional. Plaintiffs point only to the fact that the lack of evidence is "convenient" for Defendants. Defendants, on the other hand, state that "record searches were performed during the course of this litigation .... No records were found." They add that there is no testimony that would indicate that the records were destroyed rather than "merely misplaced well before the accident."

In *Brewer*, the district court faced a somewhat similar factual situation. The defendant there claimed that the evidence at issue was lost when files were transferred after its in-house attorney died. The defendant further averred that it had searched for the missing evidence to no avail. The district court refused to grant plaintiff's request for a spoliation inference based on defendant's averment, as well as its finding that the file was lost and not intentionally destroyed. The Third Circuit affirmed the lower court's ruling. *Brewer*, 72 F.3d at 334.

■ In the present case, while the circumstances of the loss of evidence are both less clear and less extreme than those in *Brewer*, the Court finds it conceivable that

the documentation was misplaced either during the transfer of records after the WBSCO sale or in the several intervening years prior to the initiation of litigation. There is no evidence to the contrary. Where there is no direct evidence that the documentation was knowingly misplaced or destroyed, and where Defendants state that they searched for the documents but were unable to locate them, a spoliation inference is improper. *See Brewer*, 72 F.3d at 334; *Costello*, 2001 WL 732402, at *26. Therefore, the Court will deny Plaintiffs' request for a spoliation inference.

### 2. Defendants' Motion to Exclude Evidence Pertaining to Post–1986 Manuals Issued by WBSCO and Gribetz

Defendants seek to preclude Plaintiffs from introducing any evidence of manufacturer manuals issued by WBSCO and Gribetz after 1986, including all relevant testimony of Defendants' agents, the manuals themselves, and the testimony and report of Plaintiffs' expert. John R. Jones, Jr., P.E. ("Mr.Jones"). Although Defendants couch their motion in broad terms, they are clearly most concerned with the possible introduction of evidence relating to the Revised Manual. Therefore, the Court will focus its attention on that manual.

### A. Revised Manual and Testimony of Defendants' Agents

With respect to the Revised Manual itself and the testimony of Defendants' agents. Defendants contend that evidence should be excluded pursuant to Federal Rules of Evidence 402 and 403. They claim that evidence is both irrelevant and will confuse and mislead the jury.

■ Rule 402 states that "[e]vidence which is not relevant is not admissible." Fed.R.Evid. 402. Relevance is defined in Rule 401 as

evidence having any tendency to make the existence of any fact that is of conse-

quence to the determination of the action more or less probable than it would be without the evidence

Fed.R.Evid. 401. A trial judge has broad discretion to determine the relevance of proffered evidence. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. Rule 403 places in the sound discretion of the trial court the decision to exclude relevant evidence. *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir.1990). However, the Third Circuit has warned that evidence should be excluded under Rule 403 only sparingly because the evidence excluded is concededly probative. *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir.1994). Therefore, the balance under the Rule should be struck in favor of admissibility. *Id.*

Defendants argue that evidence of the Revised Manual is irrelevant on two grounds. First, they suggest that because Plaintiff admitted he never read the entire manual on site, the fact that the manual was revised does not matter. Second, Defendants claim that it is "extremely speculative" that information contained in the Revised Manual would have prevented the accident.

■ In response, Plaintiffs first argue that Defendants ignore the basic tenets of the theory upon which Plaintiffs' case is predicated. One of their claims arises in strict products liability and is based on the "failure to warn." In such a claim, the defect is the omission and/or absence of adequate "warning to unsuspecting users with respect to dangers associated with

the intended or foreseeable use of the product." *Yarchak v. Trek Bicycle Corp.,* 208 F.Supp.2d 470, 493 (D.N.J.2002). Applying the foregoing to the present case. Plaintiffs argue that evidence of the Revised Manual, which contained additional safety warnings, and which was admittedly never sent to Plaintiff or his employer, is certainly relevant to their claim of failure to adequately warn.

■ Next, Plaintiffs contend that the modern trend in New Jersey products liability law negates Defendants' argument concerning Plaintiff's failure to read the manual. Plaintiffs point to *Coffman v. Keene,* 133 N.J. 581, 628 A.2d 710 (1993), in which the Supreme Court of New Jersey established a "heeding presumption" in warning defect cases. *Id.* That principle presumes that an individual would have followed an adequate warning had such a warning been provided. *Id.* at 600, 628 A.2d 710. According to Plaintiffs, in the present case, the heeding presumption operates to render moot Defendants' argument above because it presumes both that Plaintiff would have read the warnings contained in the Revised Manual and that Plaintiff would have followed those warnings.

The Court agrees with Plaintiffs. The fact that Plaintiff never read the entire Original Manual is not dispositive in light of *Coffman.* Defendants' remaining argument rests on the conclusory and unsupported assertion that it is "extremely speculative" that the information in the Revised Manual would have prevented the accident. New Jersey law creates precisely the opposite presumption. Evidence of the Revised Manual is relevant. It is therefore admissible unless Rule 403 operates to exclude it.

Defendants state that the Revised Manual will confuse and mislead the jury be-

cause the manual was produced after changes were made to the Wrapper. The Court fails to see the logic in this argument. At his deposition. David Sampson, one of Defendants' engineers, testified that the Revised Manual was set up for the substantially redesigned Wrapper and therefore much of the manual would not apply to older machines. Sampson Dep. at 73. However, he also stated that "generally speaking the warnings and cautions that are given in the [Revised Manual] would be applicable to the [Original Manual]." *Id.* at 75.

■ Sampson's testimony suggests that the redesign of the Wrapper did not negate the utility of the Revised Manual's warnings with respect to the original machine. Consequently, the Court simply does not see how the fact that the Revised Manual was produced after the Wrapper was redesigned would confuse or mislead the jury. Rather, the Court is confident in the jury's ability to comprehend the impact of the machine's redesign on the applicability of the Revised Manual to older machines. Certainly, counsel will have ample opportunity to present their views on this issue to the jury at trial. The Court finds that this case does not present that rare and "sparing" circumstance where Rule 403 should be applied. Therefore, with the exception of Plaintiffs' expert report and testimony, discussed below, the Court will deny Defendants' motion to exclude evidence of the Revised Manual.

B. *Opinion Testimony of Plaintiffs' Expert*

Defendants also seek to exclude the report and testimony of Plaintiffs' expert, Mr. Jones, on the grounds that his testimony does not meet the standards for admissibility set forth in Federal Rule of Evidence 702.[4] As amended December 1, 2000, Rule 702 provides:

**4.** Defendants' dispute Mr. Jones's competence

only on the issue of the warnings contained in

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The recent changes to Rule 702 were the result of the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In *Daubert,* the Court sought to impose "some degree of regulation" on the use of expert testimony. *Id.* at 589, 113 S.Ct. 2786. To do so, it established a "gatekeeping role for the [trial judge]." *Id.* at 597, 113 S.Ct. 2786.

[T]he trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592–93, 113 S.Ct. 2786. The proponent of the expert evidence must satisfy this burden by a preponderance of the evidence. *Id.* at 593 n. 10, 113 S.Ct. 2786. The Supreme Court later extended the *Daubert* holding to non-scientific expert opinions, such as those of an engineer. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ In *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717 (3d Cir.1994) ("Paoli II"), the Third Circuit distilled the *Daubert* analysis into three requirements: (1) the witness must be qualified as an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Id.* at 741–43. These requirements are commonly referred to as: qualifications, reliability and fit. *Poust v. Huntleigh Healthcare,* 998 F.Supp. 478, 490 (D.N.J.1998).

■ In the Third Circuit, "[t]he qualifications requirement of 702 has ben interpreted liberally." *Paoli II,* 35 F.3d at 741. Thus, "a broad range of knowledge, skills, and training qualify an expert as such .... We have eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications." *Id.*

■ With respect to the reliability requirement, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir.1997). The focus "must be solely on the principles and methodology, and not on the conclusions that the experts generate." *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786. While both the Supreme Court and the Third Circuit have set forth extensive factors for the district court to examine in making this determination, they are "neither exhaustive nor applicable in every case." *Kannankeril,* 128 F.3d at 806–07. Instead, the district court, as gatekeeper, should take a flexible approach, making an

the Wrapper manuals. Therefore, the Court will confine its analysis and ruling herein to

that narrow issue of admissibility.

inquiry "relevant to the task at hand." *Poust,* 998 F.Supp. at 491.

█ Finally, the expert's testimony must fit, i.e., it must assist the trier of fact. *Paoli II,* 35 F.3d at 743. There must be a "proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *Id.* As with the expert's qualifications, the requirement of fit is not intended to be a high standard. *Id.* at 744. The proponent need only demonstrate a "valid scientific connection." *Id.* at 743.

Defendants rest their argument on the proposition that Mr. Jones's expert opinion is not reliable as required by Rule 702. They contend that "[h]is opinions regarding the warnings ... are not based on any proven methodology or supportive documentation. Rather, they are mostly assumptions. There is nothing in Mr. Jones report to suggest that other similar machines include certain warnings or that certain warnings were tested." D. Mem. L. at 7.

In response, Plaintiffs submit an affidavit of Mr. Jones in which he sets forth both an extensive list of the source material he relied upon and the methodology he utilized in reaching his conclusions. That methodology can be summarized as: (1) he analyzed federal and national safety standards; (2) he studied the Wrapper, its schematics and the deposition testimony of certain of Defendants' employees; and (3) he compared (1) and (2) and determined that the warnings were insufficient. Plaintiffs argue that Mr. Jones's analysis demonstrates the reliability of his opinion. At a minimum, Plaintiffs ask the Court to

hold a *Daubert* hearing before ruling on the admissibility of Mr. Jones's testimony.[5]

█ The Third Circuit has "long stressed the importance of *in limine* hearings under Rule 104(a) in making the reliability determination under Rule 702 and *Daubert.*" *Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 417 (3d Cir.1999). That is particularly true where, as here, both parties agree that a hearing is proper. *See id.* In addition, the Court finds that a hearing would be useful in this case where non-scientific expert testimony is at issue and so the typical *Daubert* factors for evaluating the reliability of the methodology are not very helpful. Additional testimony will hopefully flesh out the reliability or lack thereof of Mr. Jones's expert testimony. Therefore, the Court will reserve judgment on Defendants' motion *in limine* to exclude the report and testimony of Plaintiffs' expert Mr. Jones. The Court will order a hearing to determine whether Mr. Jones's opinion, with respect to the adequacy of the Wrapper safety warnings, satisfies the reliability requirement of Rule 702.[6]

3. *Defendants' Motion to Exclude Evidence Pertaining to Post–1986 Design Changes*

█ Defendants move to exclude any evidence of post–1986 design changes to the Wrapper. Defendants argue that Plaintiffs wish to introduce that evidence to show that the original Wrapper design was faulty when in reality the Wrapper was redesigned for unrelated reasons. They propose that such evidence will con-

5. Defendants concede the propriety of holding such a hearing.

6. While the Court is mindful of the value of holding a *Daubert* hearing, it also recognizes that Plaintiffs and their expert have expended time and expense attempting to set forth Mr.

Jones's qualifications and the reliability of his opinions. In addition, both sides will now incur additional expenses associated with the hearing. Therefore, the Court will also order that the losing party at the hearing shall pay all of Mr. Jones's expenses associated with the hearing.

fuse the jury and so should be excluded pursuant to Federal Rule of Evidence 403.

At base, Defendants seek to preclude the introduction of alternative theories of the case. That is simply no reason to exclude probative evidence. The Court was not persuaded by Defendants' Rule 403 argument in connection with their motion to exclude evidence of changes to the Wrapper manual. For much the same reasons, the Court rejects Defendants' position here as well. Therefore, the Court will deny Defendants' motion *in limine* to preclude the introduction of any evidence pertaining to post–1986 Wrapper design changes.

### CONCLUSION

For the foregoing reasons the Court will (1) deny Plaintiffs' motion for a spoliation inference; (2) deny Defendants' motion *in limine* to exclude evidence of post–1986 changes to the Wrapper manual with the exception of evidence presented by Plaintiffs' expert Mr. Jones; (3) order a hearing to determine the admissibility of Mr. Jones's testimony and expert report as it pertains to the adequacy of the Wrapper manual safety warnings; and (4) deny Defendants' motion *in limine* to exclude evidence of post–1986 design changes to the Wrapper.

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Memorandum Opinion filed herewith,

It is on this 7th day of August, 2003

ORDERED that plaintiffs' motion for a spoliation inference is denied; and it is further

ORDERED that defendants' motion *in limine* to exclude evidence of post–1986 changes to manuals issued by defendants is denied with the exception of evidence presented by plaintiffs' expert John E.

Jones, Jr., P.E. ("Mr.Jones"); and it is further

ORDERED that the Court will hold a hearing to determine the admissibility of Mr. Jones's expert evidence. The parties shall contact the deputy clerk of the Court to schedule the hearing; and it is further

ORDERED that the losing party at that hearing shall pay all expenses incurred by Mr. Jones in connection with the hearing; and it is further

ORDERED that defendants' motion *in limine* to exclude evidence of post–1986 machine design changes is denied.