**SONIA BRIGHT, Plaintiff**
**v.**
**UNITED CORP., d/b/a PLAZA EXTRA, Defendant**

SX-04-CV-506

Superior Court of the Virgin Islands

Division of St. Croix

June 11, 2007

ELIZABETH KLIESCH, ESQ., Colianni & Colianni, St. Croix, U.S. Virgin Islands, *Counsel for Plaintiff.*

CARL A. BECKSTEDT, III, ESQ., Bryant, Barnes, Moss, Beckstedt & Blair, St. Croix, U.S. Virgin Islands, *Counsel for Defendant.*

D'ERAMO, *Superior Court Judge*

## MEMORANDUM OPINION

### (June 11, 2007)

### I. INTRODUCTION

THIS MATTER is before the Court on the August 22, 2005 *Motion for Summary Judgment* of Defendant, United Corp., d/b/a Plaza Extra [hereinafter "Defendant" or "Plaza"]. Defendant asks this Court to find that Plaza had neither actual nor constructive notice of any substance on the floor of its establishment that may have caused Plaintiff's injuries. Plaintiff, Sonia Bright [hereinafter "Plaintiff" or "Bright"] filed an *Opposition to Defendant's Motion for Summary Judgment* on September 13, 2005. Defendant responded to Plaintiff's brief on October 7, 2005. For the reasons that follow, the Court grants Defendant's *Motion for Summary Judgment* and dismisses this action with prejudice.

### II. FACTUAL BACKGROUND

Plaintiff filed a complaint with the Superior Court of the United States Virgin Islands, Division of St. Croix on September 21, 2004. Bright's complaint contends that she slipped and fell on an unknown substance while shopping at Defendant's Plaza Extra grocery store in Estate Sion Farm, sustaining injuries to her leg, ankle and person.

The facts, according to Bright's deposition testimony, are as follows:

On the morning of June 20, 2004, Plaintiff went to Defendant's store with her son Erick in the early afternoon. (Sonia Bright Dep. 27:20-21, Nov. 18, 2004). While passing near the check-out lanes near the front of the store, Bright slipped and fell on her left side. (Bright Dep. 36:20-21).

Bright did not notice any substances on the floor prior to her fall. (Bright Dep. 28:8-9). She did feel a wet substance on her backside that she described as having the scent of "dish liquid." (Bright Dep. 42:4-43:9). Bright had difficulty getting up, but managed to continue shopping for a few more minutes before she decided that the pain was too much to continue. (Bright Dep. 44:21-45:2, 47:1-9). She spoke with a store employee about cleaning up the liquid. (Bright Dep. 64:12-25). She claims to have seen drops of pink liquid when she passed back through the area after continuing her shopping. (Bright Dep. 56:13). Bright admits having no knowledge as to whether Plaza had any sort of notice of the liquid prior to her fall. (Bright Dep. 62:21-63:22).

Bright reported her fall to Karim Boucenna, a manager working at Defendant's store that day. (Bright Dep. 47). Karim filled out an incident report with Bright and she signed the statement. (Bright Dep. 51:7-16). Bright reviewed the statement during her deposition and testified that, with the possible exception of the exact register aisle she was walking down and the description of her fall as being more "left" than "backwards," the rest of the form was correct. (Bright Dep. 53:4-55:15).

## III. LEGAL STANDARD

The *Motion for Summary Judgment* is governed by the Federal Rules of Civil Procedure to the extent that said rules are not inconsistent with the Rules of the Superior Court. *See* SUPER. CT. R. 7. Summary judgment is appropriate when the evidence admissible at trial fails to demonstrate a genuine issue of material fact. *See* FED. R. CIV. P. 56(c). In cases where no issue of material fact exists, the moving party is entitled to judgment as a matter of law. *See id.* The initial burden of proving the absence of a genuine issue of material fact falls to the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden can be met by introducing affirmative evidence or pointing the absence of evidence necessary to the non-moving party's success at trial. *See id.* at 325. The Court considers the evidence presented in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party then has the burden of responding with sufficient proof, setting forth specific facts that show a genuine issue exists. *See* FED. R. CIV. P. 56(e). The non-moving party may not rest upon the mere allegations of its complaint

when the evidence presented successfully shifts the burden of proof to the non-moving party. *See First Nat'l Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). Affidavits or other forms of proof setting forth specific facts are necessary to rebut the moving party's allegations. *See* FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Failure to adequately rebut the moving party's evidence is cause for summary judgment. *See Celotex*, 477 U.S. at 322.

Accordingly, Plaza has the initial burden of showing that no genuine issue of material fact exists with respect to at least one essential element of Bright's case. Should Plaza place an element of Bright's case outside the realm of genuine dispute, Bright will have the burden of putting forth sufficient pieces of affirmative evidence that confirm such a dispute remains. The Court will look at Plaza's evidence in the light most favorable to Bright. If Bright fails to meet her burden the Court awards Plaza summary judgment pursuant to the Rule.

## IV. DISCUSSION

The Superior Court has jurisdiction over this matter according to Title 4 V.I. CODE ANN. § 76 (1957, amended 1990). Plaintiff has filed an action for damages premised on a theory of negligence. The United States Virgin Islands, absent local laws to the contrary, apply the rules of the common law as expressed in the restatements of the law. *See* Title 1 V.I. CODE ANN. § 4 (1957). This includes the Restatement (Second) of Torts. *See Baumann v. Canton*, 7 V.I. 60 (D.C.V.I. 1968).

 A business owner or possessor of land owes a duty to each invitee he welcomes onto his premises. *See Morris v. Gimbel Brothers, Inc.*, 394 F.2d 143 (3d Cir. 1968). The duty owed each invitee is "to maintain [the] premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended." *Id.* at 145. In order for an invitee to succeed in a negligence action against a business owner, the injured invitee must establish that the owner:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

311

(b) should expect that [the invitee] will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger. RESTATEMENT (SECOND) OF TORTS § 343 (1965).

Plaza's motion contends that the requirement of notice, as described in (a), above, has not been met and therefore this action cannot proceed to trial. In support of this claim, Plaza notes that Bright has failed to show that any of Plaza's employees were aware of a substance or dangerous condition. Plaza further asserts that without evidence indicating how long any substance existed on the floor, there are no facts for a jury to decide whether or not Plaza, through the exercise of reasonable care, would have discovered the condition. *See id.* at (a).

Proof of notice can be achieved by properly alleging and proving either actual or constructive notice. Actual notice would amount to proof that someone employed by Plaza had discovered or been informed of some condition potentially hazardous to invitees prior to Bright's fall. Bright does not allege that Plaza had actual notice in any of her pleadings, and therefore constructive notice must be shown. To do so, Bright must establish that "the floor condition existed for such a length of time that [Plaza], in the exercise of ordinary care, should have been aware of the condition." *See Berkeley v. Pueblo Supermarket,* 740 F.2d 230 (3d Cir. 1984). Plaza argues that because Bright offers no evidence indicating how long before the incident the condition existed, she cannot be granted relief as a matter of law.

Bright filed a timely response to Plaza's motion. Her response claims that Plaza erased a surveillance video tape showing the area where Bright fell just prior to her incident. She claims that the loss of such evidence gives rise to an adverse inference that the video contained information unfavorable to Plaza and its defense. Furthermore, drawing on this inference, Bright believes that a jury could find that the video showed a liquid existed on the floor long enough to qualify as constructive notice. Plaza responded by arguing both that the adverse inference is inappropriate absent a showing of fraud and that such an inference cannot be used to establish an essential element of her case.

The Court begins by evaluating the availability of the adverse inference, better known as the "spoliation inference," followed by its

application to the present matter and its bearing on this disposition of this motion.

## A. Availability of the Spoliation Inference

The legal maxim *in odium spoliatoris omnia proesumuntur* speaks to a largely unsettled body of law. Roughly translated, the maxim reads: "everything is presumed to the prejudice (literally: hatred) of the despoiler." *See* BLACK'S LAW DICTIONARY 1645 (7th ed. 1999) (parenthetical supplied). When to permit the inference and what exactly may be inferred are the subjects of much academic and legal debate. The common law provides that a negative *inference,* not a presumption, may be drawn against a spoliator. *See Aetna Life and Casualty Co. v. Imet Mason Contractors*, 309 N.J. Super. 358, 707 A.2d 180 (App. Div. 1998); 29 AM. JUR. 2D *Evidence* § 244 (2007); 22 WRIGHT & GRAHAM, FED. PRAC. AND PROC.: EVIDENCE § 5178 (1978). The inference permitted is that the destroyed evidence was unfavorable to the spoliator. *See id.* Courts treat both the standards of evaluation and remedies available for spoliation in a number of different ways. *Compare McMillin v. State Farm Lloyds*, 180 S.W.3d 183 (Tex. App. 2005) (must show duty to preserve, intent and prejudice to non-spoliator in order to sanction) *with Rambus, Inc. v. Infineon Tech. AG*, 220 F.R.D. 264 (E.D. Va. 2004) (bad faith intent not required, simple knowledge of potential litigation may result in sanctions). Courts and legislatures have weighed in, both recognizing and dismissing the existence of separate intentional and negligent torts for the spoliation of evidence. *See generally* 86 C.J.S. TORTS § 91 (2007); 2 L. OF TOXIC TORTS § 22:27 (2007); *see also Hazen v. Municipality of Anchorage*, 718 P.2d 456 (Alaska 1986) (adopting intentional tort of spoliation); *Smith v. Superior Court*, 151 Cal. App. 3d 491, 198 Cal. Rptr. 829 (Dist. Ct. App. 1984); *see contra Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177 (1987) (rejecting intention spoliation tort); *Gardner v. Blackston*, 185 Ga. App. 754, 365 S.E.2d 545 (1985) (noting that Georgia does not recognize separate tort action for spoliation of evidence); *Gilleski v. Community Med. Ctr.*, 336 N.J. Super. 646, 765 A.2d 1103 (2001) (rejecting negligent spoliation tort).

The Third Circuit's standard permitting an adverse inference to be drawn due to the spoliation of evidence is articulated in *Gumbs v. Int'l Harvester, Inc. See* 718 F.2d 88 (3d Cir. 1983). The *Gumbs* ruling holds

that for the rule to apply, two things must be clearly established. *See id.* at 96. First, "it is essential that the evidence in question be within the [spoliator's] possession or control." *Id.* Second, "it must appear that there has been an actual suppression or withholding of the evidence." *Id.* Accordingly, in order to determine Bright's right to the benefit of the inference the Court looks for satisfaction of both herein.

Examining the facts of the immediate case, Plaza has never disputed that the surveillance video was within its exclusive control. Prior to release of a brief eighty-two second clip containing Bright's fall, "possession or control" of the surveillance video at issue was retained by Plaza's management. *See id.* Thus, the Court finds that the first requirement of the *Gumbs* standard is met. *See id.*

The second requirement of "actual suppression or withholding," demands greater scrutiny by the Court. Reviewing the District Court's refusal to give a spoliation inference instruction to the jury, the *Gumbs* Court found the following:

> Since, on the record before us, the plaintiff did not have control of the U-bolt and photographs, and since there is no evidence in the record that the plaintiff willfully permitted the U-bolt and photographs to be lost or destroyed, the district court properly refused to give the adverse inference instruction. *Id.* at 97.

The holding reads "actual suppression" to mean "willfully." *See id.* Courts within the Third Circuit have split in the years since *Gumbs* as to the construction of "actual suppression." *Compare Veloso v. Western Bedding Supply Co.*, 281 F. Supp. 2d 743 (D.N.J. 2003) (must have intentional destruction) *and Costello v. City of Brigantine*, 2001 U.S. Dist. LEXIS 8687, at *26 (D.N.J. 2001) (must have knowing destruction) *with MOSAID Tech. v. Samsung Electronics*, 348 F. Supp. 2d 332 (D.N.J. 2004) (as long as the evidence in question is relevant, the culpability of the offending party is immaterial) and *Scott v. IBM Corp.*, 196 F.R.D. 233 (D.N.J. 2000) (inference can be made absent proof that evidence was knowingly destroyed).

The cause for the split is directly related to unresolved debate over the appropriate *mens rea* for finding conduct that constitutes spoliation of evidence. Some District Courts within the Third Circuit have held that "actual suppression" must be intentional or fraudulent. *See Veloso*, 241 F. Supp. 2d at 746. Others dismiss the need for actual intent, arguing a

more "flexible" approach should be utilized. *See MOSAID*, 348 F. Supp. 2d at 337. A flexible approach, it has been argued, would permit the application of the adverse inference so long as the evidence in question is relevant, discounting intent or *mens rea* altogether. Although an important distinction, this Court believes that the debate over the application of *mens rea* is unnecessary because it was settled in *Gumbs,* has been affirmed since *Gumbs,* and remains good law to date. *See Gumbs*, 718 F.2d at 96; *see also Brewer v. Quaker State Oil Refining*, 72 F.3d 326 at 334 (3d Cir. 1995).

The *Gumbs* Court determined the requisite level of intent by premising the second requirement of its test on the cumulative findings of the law as it was published in several legal treatises at that time. Cited parenthetically in *Gumbs,* the second test element was a construction derived from language that read as follows:

> Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent. *Gumbs*, 718 F.2d at 96, *citing* 29 AM. JUR. 2D *Evidence* § 177.[1] (Brackets in original)

█ Thus, the *Gumbs* Court, acting upon the status of the law in 1983, required that there be "intentional" conduct that "indicates fraud and a desire to suppress the truth" when it penned the second requirement, "actual suppression." *See Gumbs*, 718 F.2d at 96. The *Brewer* Court cited *Gumbs* and its references verbatim in 1995 when it upheld the requirements for the application of the spoliation inference. *See Brewer,* 72 F.3d at 334. There is no evidence that the *Gumbs* Court intended for the requirements to evolve absent legislative or court action. Thus, this Court must determine whether the conduct exhibited by Plaza and its employees falls within that conduct prohibited by the language giving meaning to "actual suppression."

In his June 15, 2005 deposition, Wally Hamed stated the surveillance system employed at that time saved the taped images to the hard drive where it was stored for a period of one to three weeks before reusing

---

[1] The quotation and citation provided were current at the time *Gumbs* was published in 1983.

itself. (Wally Hamed Dep. 20:24-21:12, June 15, 2005). Although the date of Bright's request for the tape is not available for the record, the testimony at deposition indicates it wasn't until at least after the initiation of the lawsuit, over three month later. (Hamed Dep. 17:9-18:18). Such a lapse of time would not have been unreasonable for a video surveillance system like the one used by Plaza to have taped over data relevant to Bright's case, absent intervention. However, when a person reports an injury, Plaza reviews the video in an attempt to determine where the hazardous substance originated. (Hamed Dep. 26:18-32:6). Although there is no written policy, it is custom for the store to look back and try to determine where something came in or how a spill was caused. (Hamed Dep. 26:18-27:11). Upon review of the video in Bright's case, Plaza believed Bright had "tripped over herself" and thus did not believe it had reason to save video beyond the period ultimately saved and surrendered to Bright's attorneys at their request months later. (Hamed Dep. 19:5-6). When asked if it was customary to keep only about a minute of footage, the store said that it depended on circumstances. As Hamed said in his deposition:

> "[I]f somebody said they slipped on a grape or on a lettuce or something, we would go back and try to find out where that lettuce came in from or whatever. But when there's nothing that the customer fell on, there's nothing to go back to. I mean it's not written in stone, but it is sort of judgment call that the person takes at the time. (Hamed Dep. 26:20-27:4).

Further into his testimony, Hamed said that if an item is found on the floor, they would try to trace it back to its origin, which may include something falling or being spilled. The recorded footage, in those cases, could go back anywhere from thirty seconds to five minutes, depending on the incident. (Hamed Dep. 31:18-32:6). In some cases, the source of the substance can never be identified by video review.

The language in *Gumbs* states that "it must appear that there has been actual suppression or withholding of the evidence." *See Gumbs*, 718 F.2d at 96. As discussed above, this is taken to mean that the "destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent." *See id., citing* 29 AM. JUR. 2D

*Evidence* § 177.[2] Bright offers no evidence that Plaza has attempted to perpetuate fraud or that Plaza's conduct was anything other than a matter of routine.

The Court realizes that Plaza is not the ultimate decider of fact in whether the surveillance video contained evidence of a spill that would constitute notice, an element necessary to Plaintiff's case. However, in order to gain the advantage of any inference that the video contained evidence detrimental to Plaza, the standard adopted by the *Gumbs* Court requires that Bright show the loss of additional video footage was an act of fraud or out of line with some existing store policy.

Accordingly, the Court cannot permit a spoliation inference to be drawn against Plaza for the loss of additional video tape in this matter. Bright had the ability to request video evidence of other incidents in an attempt to argue that Plaza's conduct was an aberration. Bright had the ability to interview other witnesses and employees who could corroborate her version of the facts or provide information that would tend to show some hazardous substance was on the floor prior to her fall. Despite the availability of these resources, Bright has attempted to prove the requisite element of notice through the introduction of a negative inference. Bright has failed to establish a proper basis for use of the spoliation inference. She has not alleged fraud on the part of Plaza or its employees and she has not produced any evidence that shows their review of the tape constituted an act not in keeping with custom or practice. Furthermore, she does not allege or prove that changes to the tape occurred at any point after her request for such information. Accordingly, Bright does not have the benefit of the spoliation inference and may not use the same for the purpose of proving any of the facts necessary to her case. In short, Bright has failed to adequately meet the burden of proving the element of notice necessary to the success of her case at trial.

Legislators are competent and capable of taking a myriad of actions if they feel that the present law is outdated or requires tweaking. They may choose to draft statutes that directly address the problem of spoliation, both intentional and negligent, in everyday litigation. Such statutes could outline the proper place for courts to provide relief to non-offending

---

[2] This citation no longer exists due to updates, it has been copied from its use in *Gumbs*.

parties as well as judicial remedies available to judges. Alternatively, the legislative branch is vested with the power to amend the Virgin Islands Code. The common law dictates that spoliation give rise to an inference that the destroyed or lost evidence was detrimental to the spoliator. If the Legislature wanted to give intentional or negligent destruction of evidence greater legal weight than a mere inference, it is fully capable of doing so. The laws of the Third Circuit and those governing the Territory through the Restatement do not permit this Court to afford any relief greater than that discussed herein. Expansion of the rule of law beyond clearly defined standards of statute and precedent is not within the purview of authority prescribed to this Court.

Accordingly, this Court refuses to adopt an application of the spoliation doctrine beyond the inference permitted. Thus, even if Bright had merited use of the inference, it alone would not assist her in proving the notice element required in order for her claim to survive summary judgment.

## V. CONCLUSION

A party opposing summary judgment may not rest upon their mere pleadings but must instead set forth specific *facts* showing that there is a genuine issue of material fact for trial. *See* FED. R. CIV. P. 56(e). There must be sufficient evidence favoring the non-moving party such that a jury could rule for the non-moving party. *See Anderson*, 477 U.S. at 249. The mere possibility that something happened in a certain way, as advocated by Bright, is not enough for a jury to find the same as a matter of law. *See Saldana v. Kmart Corp.*, 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001); *Fedorczyk v. Caribbean Cruise Lines*, 82 F.3d 69 (3d Cir. 1996); *Lanni v. Pennsylvania RR*, 371 Pa. 106, 88 A.2d 887 (1952).

Sonia Bright offers no evidence that Plaza knew or should have known that something hazardous was on the floor of their store. Absent facts that tend to establish the existence of a hazard for at least some period of time before her fall, no reasonable jury could state as a matter of law that Plaza breached its duty to Bright as an invitee and therefore be liable for negligence. Bright attempts to fill this void by arguing that lost or destroyed surveillance video creates a negative inference that it contained evidence of notice. Her opposition to the present motion does not demonstrate fraud or deceit that would permit deliberation on the availability of the spoliation inference. Accordingly, no inference can be

awarded. Even so, the Court finds that an inference alone is insufficient proof of a material fact as a matter of law. Thus, even if this Court granted the inference requested, Plaza's motion would still be granted. Defendant's *Motion for Summary Judgment* is granted and Plaintiff's complaint is hereby dismissed with prejudice.